IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

In re:

ROBERT JACKSON WILMINK
ANGELA KAY WILMINK

Case No. 04-21953
Chapter 7

Debtors.

UNITED BANK, INC.

v.

A.P. No. 04-02108

ROBERT JACKSON WILMINK and
ANGELA KAY WILMINK


MEMORANDUM OPINION AND ORDER ON COMPLAINT OF UNITED BANK SEEKING
A DETERMINATION THAT A CERTAIN LOAN OBLIGATION IS
NONDISCHARGEABLE UNDER PROVISIONS §523(a)(4) AND/OR
§523(a)(6) OF THE U.S. BANKRUPTCY CODE

This matter came before the Court in a hearing on September 11, 2007. Appearances were made by the Debtor Robert Wilmink, William DePaulo as counsel for the Debtor/Defendant, and James Lane, Jr. as counsel for the Plaintiff, United Bank.


FINDINGS OF FACT


The Debtor and his wife formed an LLC in 1999 for the purchase of a restaurant business specializing in hot dog sales in Charleston, West Virginia. The loan was processed and approved by Mr. Tim Hendrick of United Bank in Huntington, West Virginia, for the full amount of the purchase price of the business. After the initial loan of $60,000 to purchase an existing hot dog operation, a subsequent $50,000 loan was made to the same LLC of the Debtors to buy additional equipment and start one or more additional locations.

Although modestly profitable, after an additional loan and additional locations were opened, the business became less so. In a series of discussions and negotiations with the United Bank loan officer and the Debtor, Robert Wilmink, a third consolidating loan was agreed to under the terms of which the Debtors gave United Bank a second mortgage lien interest in their home to secure the consolidation of the two previous loans to the LLC. This combined and reduced somewhat the monthly payment obligation on the two previous loans. Following the consolidation loan, business events combined ultimately to convince the male Debtor that the business was doomed to failure. Further consultations were had with the United Bank loan officer in Charleston, Brad Richey, and with the existing United Bank loan officer, Tim Hendricks, in Huntington. Writings in the form of a typewritten instrument with handwritten notations of Mr. Hendricks thereon comprising Exhibit 6 outlined some of the topics discussed at a December 10 and 11, 2003, meetings, where the sale of the business was discussed. The primary witness for United Bank, Mr. Hendricks, and Robert Wilmink differ with respect to the items disclosed at the December 10 and 11 meetings, but the second page of the December 11 meeting contained the name of the individual who ultimately became the purchaser of the business. By two payments that totaled $42,000 and a promise of further monthly payments, Mike Kennedy purchased the hot dog businesses as a going concern. $37,000 of sums paid down was deposited by the Debtor in a United Bank account.

This action was primarily brought pursuant to United's conviction that there was a continuing and well-understood obligation to pay over proceeds from the sale of all personal property assets of the business to satisfy the consolidated loan. However, the Debtor's testimony

was that he understood that by having given United a second lien on his residence, at least at the time of the sale of the business assets to Mr. Mike Kennedy, that the business assets were free and clear of liens by United Bank. Documentation admitted at trial indicates otherwise, and the Debtor now acknowledges that United Bank retained its lien on the personal property assets prior to the second lien on his home.

The Court finds that there were substantial efforts made the male Debtor to repay the loan. The testimony of the bank officer and the Debtor with respect to the understanding reached about the application or use to be made on the proceeds on sale of business assets are dramatically opposite to one another. Therefore the Court is unable to conclude that the parties reached a clear understanding as to the continuing obligation the Debtor was under to turn over loan proceeds from the sale of business assets. Further, the advice the Debtor was receiving from United Bank officers to use credit card receipts to make loan payments on United's business loan to keep it current further compromise the legitimacy of United's claim that their advice to the Debtor has at all times been as expressed in connection with this case.

## CONCLUSIONS OF LAW

The legal standard for nondischargeability under §523(a)(4) or §523(a)(6) requires that a debtor be intentional with respect to the fraud, defalcation, or injury alleged by the creditor. The Court finds that there is insufficient evidence of intent to defraud or injure at the time the Debtor received and applied the proceeds amounting to $42,000 from Mike Kennedy for the downpayment on the sale of his business assets. The intervening security interest on the personal residence, and the failure of United Bank to have corroborating testimony with respect to their

understanding of discussions between the Debtor and United's loan officer in September, 2002 or December, 2003, is insufficient to carry United's burden with respect to proving intent. Accordingly, United has not carried its burden under §§523(a)(4) or 523(a)(6) and the relief requested in the complaint is DENIED and the Clerk is directed to remove this matter from the active docket.

It is so ORDERED.

ENTER: **NOV 07 2007**

_____
RONALD G. PEARSON, JUDGE